IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CARTIER, a Division of RICHEMONT NORTH AMERICA, INC., et al., | § § § § |
| Plaintiffs, | § § |
| VS. | § Civil Action No. 3:08-CV-0001-D § § |
| EGANA OF SWITZERLAND (AMERICA) CORP., et al., | § § § |
| Defendants. | § |

MEMORANDUM OPINION
AND ORDER

Plaintiffs Cartier, A Division of Richemont North America, Inc., Cartier International, N.V., and Cartier Creation Studio, S.A. (collectively, "Cartier") move the court to extend the discovery period by four months, make corresponding extensions to other deadlines, and permit it to re-depose a defendant, contending that defendants did not disclose the existence of additional infringing products until the eve of the discovery deadline. Defendants Egana of Switzerland (America) Corp. and VLC Distribution Company, Inc. ("VLC") (collectively, "Egana," unless the context requires otherwise) oppose much of the relief sought in the motion. Without resolving all of the subsidiary discovery disputes presented in the parties' briefing,[1] and for the reasons

---

[1]For example, in extending the discovery deadline so that Cartier can conduct defendants' depositions, the court is not suggesting that Cartier is or is not entitled to discovery on any particular subject. Egana maintains in its brief that the parties' dispute concerning taking defendants' depositions has been resolved

that follow, the court grants the motion.  The court also resets the trial of the case.

I

The court need only recount the background facts and procedural history that are pertinent to deciding the present motion.  Cartier sues several defendants, including Egana, alleging that they are liable for infringing Cartier's design patents in the Cartier Tank Francaise by selling look-alike watches.  When Cartier filed suit, its claims were based on two watch models: model numbers PCD4181WS and PCD2181WS (the "Original Accused Items").

On March 31, 2008 the court entered a scheduling order establishing January 9, 2009 as the deadline for the parties to complete discovery and file a joint estimate of trial length and joint status report concerning the progress of settlement negotiations.  The order set February 9, 2009 as the deadline for a party to file a motion for summary judgment or a motion not otherwise covered by the scheduling order.  In granting Egana's September 29, 2008 motion to refer case to alternate dispute resolution, the court set a January 30, 2009 deadline for mediation.

On November 11, 2008 Egana filed a motion for protective order

---

by the magistrate judge and that Cartier's request is moot.  Ds. Br. 7-8.  Cartier disagrees, and it essentially requests that the court decide the scope of the depositions.  Ps. Reply Br. 4-6.  In granting Cartier's motion, the court is not necessarily concurring in this or any other request made in either side's brief.

requesting that the definition of "Accused Items"[2] be restricted to the Original Accused Items. After a hearing on December 17, 2008, the magistrate judge entered an order the same day modifying the definition of "Accused Item." Under the order, "'Accused Item' means and includes any items which resemble the designs identified in the Complaint ¶¶ 23 to 25, including but not limited to the specific watches of style nos. PCD4181WS and PCD2181WS and any watches that resemble the specific watches of style nos. PCD4181WS and PCD2181WS." Dec. 17, 2008 Order 1. Thus the definition of "Accused Items" was broadened to include models other than the Original Accused Items. Cartier maintains that, after the magistrate judge's decision, Egana produced documents on December 29, 2008 showing four additional infringing models (the "Additional Accused Items").[3]

On January 8, 2009, before the discovery deadline expired on January 9, Cartier filed the instant motion. It contends that Egana only produced some documents concerning the Additional

---

[2]The term "Accused Item" is also used in discovery requests and responses, other pleadings in the case, and the briefs on this motion. For simplicity, the court will use the term "Accused Items" unless the context otherwise requires.

[3]In response to letter request from defendants raising questions about the modified definition, the magistrate judge conducted a telephone conference with counsel on January 8, 2009 and modified the definition so that the term does not mean any items that resemble the designs identified in ¶¶ 23 to 25 of the complaint but instead means items that plaintiffs *contend* resemble these designs.

Accused Items near the end of the discovery period; Cartier has had no discovery concerning these models; the documents appear to be incomplete and redacted; and Cartier needs additional discovery to ascertain the extent of infringement, their source, defendants' adoption of the design, and other pertinent facts. Cartier moves the court to extend the discovery deadline (which also applies to the filing of a joint estimate of trial length and of the status of settlement negotiations) so that additional depositions and document discovery can be completed, extend the mediation deadline, and extend in a manner commensurate with the discovery deadline extension the deadlines for filing summary judgment motions and motion not otherwise covered by the scheduling order. Cartier also seeks leave to re-depose Egana concerning the Additional Accused Items. Egana opposes much of the relief requested in the motion.

II

Under Fed. R. Civ. P. 16(b)(4), for a party to secure modification of the scheduling order, it must demonstrate good cause and obtain the judge's consent. To meet the good cause standard, the party must show that, despite its diligence, it could not reasonably have met the scheduling order deadline. *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 535 (5th Cir. 2003).

Cartier does not brief its motion under the Rule 16(b)(4) good cause standard or related case law, but the grounds on which it

relies to establish good cause are relatively clear.  Cartier essentially maintains it could not have reasonably met the January 9, 2009 discovery deadline because Egana attempted to (and did) circumscribe discovery to the two Original Accused Items, and for nine months rebuffed Cartier's efforts to obtain broader discovery; Egana finally produced documentary discovery on December 29, 2008, after the magistrate judge broadened the definition "Accused Items" to include watches that "resemble" the Original Accused Items, showing four additional infringing models; and Cartier has had no discovery concerning these models.  Cartier asserts that although it suspected that Egana had other model watches that incorporated the Cartier protected design, it was only after Cartier tracked down former Egana employee Maria Bast ("Bast") that it learned that Egana had sold prior models as part of its Pierre Cardin Swiss Collection.  When Cartier sought Egana's deposition a second time, Egana moved for a protective order, the magistrate judge defined the term "Accused Items" to include any other watches that resemble the other watches or the design set forth in the complaint, and Egana produced a number of documents reflecting dealings in the Additional Accused Items going back to 2003, which undermines Egana's deposition testimony that the "Accused Items" were first seen in 2005.  Cartier posits that fairness demands that it be given an adequate opportunity to take discovery on the four newly discovered Additional Accused Items.

Egana opposes most of the relief that Cartier seeks. (It does not oppose extending the discovery deadline to allow a Rule 30(b)(6) deposition of Cartier or Rule 30(b)(6) depositions of Egana and VLC, extending the mediation deadline to March 13, 2009, or extending the dispositive motion deadline to March 31, 2009.) Egana contends that Cartier squandered a discovery period of over one year and that it waited until the closing weeks of discovery to press issues that it contends justify a four-month extension of discovery. According to Egana, it produced documents related to the two models that constitute the Original Accused Items, and provided deposition discovery in response to Cartier's motion for expedited discovery. It objected to Cartier's definition of the "Accused Items"[4] as overbroad and vague. Under a court order, Cartier took four depositions that related to the "Accused Items." During the following months, Cartier served three requests for production, two sets of interrogatories, and deposition notices for Egana, VLC, and six former Egana employees (each of which it canceled). A few days before the discovery deadline, Cartier served notices for records custodian depositions for four shipping companies. Egana also posits that Cartier did not disclose its contention that there was a predecessor or prior version of the

---

[4]In Egana's February 7, 2008 response to Cartier's motion for expedited discovery, it used the terms "Accused Products" and "Accused Watches." The court has substituted the term "Accused Items." *See supra* note 2.

"Accused Items" until December 1, 2008, when the parties were preparing a joint filing in connection with Egana's motion for protective order. It maintains that its current management responded to this assertion by conducting a new search that located four watch models—the Additional Accused Items—which Egana concedes are similar to the "Accused Items" but says were discontinued before suit was filed. Egana contends that it made the magistrate judge aware of this information, enabling her to incorporate these models into the definition of "Accused Items."

Egana contests Cartier's contention that it needs four additional months of discovery, and it specifically disputes Cartier's assertion that Egana rebuffed for nine months Cartier's attempts to obtain discovery of other watch models. It maintains that its current management had not located these discontinued models, that it consistently and properly objected to Cartier's definition of "Accused Items," and that Cartier failed to take action in response to the objections, such as by filing a motion to compel. Egana contends that the delay in Cartier's obtaining the discovery in question was not Egana's fault, because it had no duty before the magistrate judge entered her December 2008 order to ignore its own objections and search for and disclose information about Additional Accused Items.

III

In determining whether the movant has met its burden under Rule 16(b)(4), the court considers four factors: (1) the party's explanation, (2) the importance of the requested relief, (3) potential prejudice in granting the relief, and (4) the availability of a continuance to cure such prejudice. *See S&W Enters.*, 315 F.3d at 536.

A

The court turns first to Cartier's explanation. When Cartier's motion and its reply brief are read together, it becomes clear that Cartier is arguing that it acted diligently because it did not confirm until November 2008——when it finally located former Egana employee Bast——that Egana had sold more than the Original Accused Items. According to Cartier, Egana witness Steve Kelly ("Kelly"), Vice President of Sales, left the impression through his deposition testimony that a February 2006 purchase order reflected the first time when anyone at Egana had purchased watches of this type, but Bast revealed that the two infringing models were based on older models, not models that were newly introduced in 2006.

The Kelly deposition tends to support Cartier's argument. According to Kelly's testimony, Egana sold watches of the type shown in exhibit nos. 1 (model no. PCD4181WS) and 2 (model no.

PCD2181WS). Kelly Dep. 31-32.[5] They were selected in the fall of 2005, *id.* at 42, and Egana introduced them in the fall of 2006 as part of the Pierre Cardin Diamond brand, *id.* at 33. Egana obtained the watches from Asian vendors. *Id.* at 39. Kelly was asked about exhibit no. 4, a purchase order from Perriland Ltd., an Asian watch manufacturer. *Id.* at 52-55. The purchase order, dated February 20, 2006, reflected that Egana had purchased quantities of watches identified by the two model numbers originally in question: PCD4181WS and PCD2181WS. *See* Exhibit 4. When asked "is this the first time that Egana purchased watches *such as* Exhibit 1 and 2 from anybody," Kelly Dep. 54 (emphasis added), Kelly answered, "Yeah. This—I would—yes. I think that is the first time they purchased it, yes. Because I do remember when the items came in. And that is just about right." *Id.* Although Cartier sought other discovery from Egana, the fact did not come to light until November (confirmed in December) that Egana had sold other alleged look-

---

[5]The court is citing the testimony this way because Cartier did not comply with N.D. Tex. Civ. R. 7.1(i)(1) and 7.2(e) in briefing this motion. Rule 7.1(i)(1) provides that "[a] party who relies on documentary (including an affidavit, declaration, deposition, answer to interrogatory, or admission) or non-documentary evidence to support or oppose a motion must include such evidence in an appendix." Rule 7.2(e) states that "[i]f a party's motion or response is accompanied by an appendix, the party's brief must include citations to each page of the appendix that supports each assertion that the party makes concerning any documentary or non-documentary evidence on which the party relies to support or oppose the motion." Cartier did not include its evidence in an appendix, paginate the appendix, or cite the appendix as required by the Rules.

alike watches.

Therefore, considering Kelly's testimony and the absence of other discovery disclosing the existence of other watch models, it was not unreasonable for Cartier to believe—before it interviewed Bast in November 2008—that Egana had not purchased these two watch models, or any other models such as these models, prior to 2006. The fact that Egana consistently objected in its discovery responses to Cartier's definition of "Accused Items" does not alter this reasoning. These objections would have alerted Cartier to the fact that Egana disagreed with Cartier's view of the scope of relevant discovery, but they did not put Cartier on notice that Egana had in fact imported and sold similar model watches that could be the subject of Cartier's suit. It was therefore reasonable for Cartier to conduct discovery on the assumption that the two model watches were the only ones that Egana had sold, while simultaneously attempting to locate former Egana employees who could either corroborate or impeach this supposition.

B

The court considers next the importance of the requested relief.

The discovery that Cartier seeks is important in the general sense that it relates to four accused infringing watch models that fall within the definition of "Accused Items" adopted by the magistrate judge. At a more specific level of inquiry, the

importance of the discovery can be analyzed according to the following four categories: document discovery, defendants' depositions, depositions of former Egana employees, and third-party discovery (custom brokers).[6]

1

Cartier requests a discovery-period extension so that it can obtain documents regarding the Additional Accused Items. It concedes that Egana has produced some documents, but it maintains that the production appears to be incomplete and the documents heavily redacted, and it seeks the complete production of unredacted versions.

Egana responds that it has made a complete production of all responsive documents and that the only redacted information was from Egana invoices to its customers and pertained to products that are not accused of infringement. Egana states that because it has a continuing supplemental-production obligation even after the discovery deadline has elapsed, a four-month extension is unnecessary.

---

[6]In the "needs" section of its brief, Egana organizes its response similarly to the four categories identified above. Cartier organizes its discovery requests under three categories: documents pertaining to defendants' dealings in the Additional Accused Items; depositions of defendants regarding their dealings in the Additional Accused Items; and follow-up depositions with former Egana employees. It also asserts that an extension of the discovery period is necessary for the completion of the following three categories of pending discovery: plaintiffs' deposition; defendants' depositions; and discovery from third parties (custom brokers).

The court agrees with Egana that a four-month extension of the discovery deadline is unnecessary for the document production that Cartier requests. But because there are other reasons (explained below) that support such an extension, there is no compelling rationale for extending the discovery deadline for some purposes but not for others (i.e., for depositions but not for document production).[7]

2

Cartier also seeks an extension of the discovery deadline so that it can depose defendants on the Additional Accused Items. Egana does not oppose such an extension of the deadline, and it maintains that this dispute is now moot. Cartier replies that this matter has not yet been completely resolved because there are two sets of depositions at issue: an initial, comprehensive set and a group of follow-up depositions.

The importance of the relief that Cartier seeks is undisputed insofar as relevant to this element of the four-part test. The parties' dispute over the scope of the depositions does not affect the importance factor in any material sense. Therefore, the court holds that this discovery has sufficient importance to warrant an

---

[7]Moreover, it appears at this point that Cartier accepts Egana's representation that a full responsive production has been made, and that the only dispute is over whether the redactions should stand. Such a dispute, if presented to the court for resolution, will be decided separately from the present motion. *See supra* note 1.

extension of the discovery period.

                                3

Cartier also seeks an extension so that it can conduct follow-up deposition discovery from former Egana employees. Egana opposes this request, arguing that it incurred considerable expenses to provide Cartier with contact information for these employees, but that after Cartier noticed six former-employee depositions in October 2008, it failed to take the depositions. Egana complains that a four-month extension of the discovery period is unjustified because the delay in obtaining this discovery was solely Cartier's fault, Cartier is merely speculating that there are other former employees with knowledge about the Additional Accused Items, and Cartier has not even taken the depositions of any of the former employees whose depositions it noticed previously. Cartier replies that, although it noticed the depositions in October, it took time to track down these witnesses, and, once it became clear there were additional accused models, Cartier awaited Egana's document production before proceeding with the depositions.

The court concludes that this discovery is important. According to Cartier, at least one former employee—Bast—has provided information regarding additional watch models that were previously unknown. Moreover, as suggested by Kelly's deposition testimony, due to changes in Egana's management, it is necessary for Cartier to depose former Egana employees to obtain all

information that falls within the scope of permissible discovery.[8] Finally, given the expansion of the scope of the Accused Items, and evidence that these items were developed and sold during the tenure of the former management team, it is important that Cartier obtain discovery from former employees who would have relevant knowledge.

4

Cartier also requests discovery from third parties (custom brokers). Egana opposes Cartier's extension request on the ground that Cartier is seeking discovery that is overly broad and unnecessary. Cartier replies that it is seeking such discovery to confirm the quantity of Accused Items that Egana imported, that the parties are attempting to resolve the scope of the requested discovery, and that it has advised the custom brokers to await making production until the dispute is resolved.

Although Egana contests the scope of the requested discovery, it does not appear to challenge its importance. For purposes of assessing the "importance" factor of the Rule 16(b)(4) inquiry, the court holds that this discovery is important.

---

[8]Egana recognizes the distinction between its current and former management. It specifically refers in its brief to what "current management" knew when explaining one reason for not disclosing the existence of the Additional Accused Items at an earlier stage in the litigation. *See* Ds. Br. 4.

C

The court next considers together the potential prejudice to Egana in granting the requested relief and the availability of a continuance to cure such prejudice. Neither side explicitly addresses these factors in its briefing.

There is no apparent potential prejudice to Egana shown in the record.[9] The two forms of potential prejudice that must usually be evaluated—even when others (e.g., merits-based prejudices) are not present—are undue expense and delay. But if the discovery Cartier seeks will cause Egana to incur any additional expense, this is due to the fact that the discovery is being allowed it all. If the court enforced the current discovery cutoff, of course, Cartier would not be able to conduct additional discovery. But there is no suggestion that allowing Cartier to conduct such discovery during the four-month extension period will cause Egana to incur any greater expenses than it would have expended had Cartier completed this discovery before the current deadline.

Regarding the potential prejudice of delay, it is clear that

---

[9]Egana at one point mentions that this is a "case with a relatively small amount in controversy," Ds. Br. 1, but it does not argue more generally that Cartier is seeking discovery that is disproportionately expensive given what is at stake in the litigation. And at another point Egana asserts that it incurred attorney's fees in locating former employees. *Id*. at 8. But it does not contend that this expense would not have been incurred if Cartier's motion were denied. Moreover, allowing Cartier to take these depositions would appear to eliminate any potentially wasted expense incurred in locating the witnesses.

the current trial setting (the July 6, 2009 two-week docket) will be negatively impacted by extending the discovery deadline four months. The new deadline will fall within the trial-docket period, and additional time must be added to allow for mediation and the filing of motions. Still, it is not apparent that the delay involved in continuing the trial will potentially prejudice Egana. This case was filed in January 2008, and it was not until December 2008 that the scope of the case was enlarged by court order to include the Additional Accused Items. The record does not reflect potential prejudice to Egana arising from a reasonable continuance of the trial setting to enable the parties to complete additional discovery and file dispositive and other motions.

D

Considering the four factors together, the court holds on the record developed here that the discovery period should be enlarged by four months to allow the parties to complete additional discovery. It follows from this conclusion that the other deadlines in question should be correspondingly enlarged.

\* \* \*

Accordingly, the court grants Cartier's January 8, 2009 motion to extend discovery and for other ancillary relief.

The court extends until July 10, 2009 the deadline for the parties to complete discovery and file a joint estimate of trial length and joint status report concerning the progress of

settlement negotiations.

The court extends until August 10, 2009 the deadline by which a party must file a motion for summary judgment and motion not otherwise covered by the March 31, 2008 scheduling order or by this order.

The court extends until July 31, 2009 the deadline by which the parties must participate in mediation.

The court grants Cartier leave to depose Egana and VLC, including leave to complete the deposition of Egana on matters that have arisen since the April 2008 deposition, such as affirmative defenses and the Additional Accused Items.[10]

The court resets the trial of this case to the two-week docket of November 2, 2009.[11]

**SO ORDERED.**

March 11, 2009.

                                                SIDNEY A. FITZWATER
                                                CHIEF JUDGE

---

[10] As noted above, Egana does not oppose completion of defendants' Rule 30(b)(6) depositions. *See also* Ds. Br. 2.

[11] Because the court is resetting this case on its own initiative without determining whether counsel, their clients, or their witnesses have material conflicts—e.g., conflicting settings in cases that are likely to be tried and prepaid vacations—counsel should alert the court to such conflicts before seeking continuances in other cases, canceling vacations, or instructing clients and witnesses to do so. The court may be able to accommodate such conflicts, if given sufficient notice.